## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

BABRBARA LYNN WEST,

           Plaintiff

   v.

KILOLO KIJAKAZI[1],

           Defendant

CIVIL ACTION NO. 3:20-CV-01561

(MEHALCHICK, M.J.)

### MEMORANDUM

Plaintiff Barbara Lynn West ("West") brings this action under sections 205(g) of the Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3) (incorporating § 405(g) by reference), seeking judicial review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act. (Doc. 13-2, at 10). The matter has been referred to the undersigned on the consent of the parties, pursuant to the provisions of 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. 7; Doc. 8).

For the following reasons, the Commissioner's decision will be **VACATED**, and the case will be **REMANDED** for further consideration.

---

[1] Kilolo Kijakazi is now the Acting Commissioner of Social Security. Under Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Commissioner Andrew Saul as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

I.   **BACKGROUND AND PROCEDURAL HISTORY**

West is an adult individual born March 10, 1972, who was 45 years old at the time of her alleged onset date of disability – July 10, 2017. (Doc. 16-3, at 2). West's age at the onset date makes her a "younger person" under the Social Security Act. 20 C.F.R. § 404.1563(c). Prior to her alleged onset date, West served as a hairstylist, an injection mold operator, and a cashier. (Doc. 16-3, at 10) (Doc. 16-2, at 18).

In April of 2018, West protectively filed an application under Title II of the Social Security Act, claiming disability beginning July 10, 2017, due to depression, diabetes, back injury, and hip displacement. (Doc. 16-3, at 2-3). The Social Security Administration initially denied the application in July of 2018, prompting West's request for a hearing, which Administrative Law Judge ("ALJ") Gerard W. Langan held on May 22, 2019. (Doc. 16-2, at 11). In a July 2, 2019, written decision, the ALJ determined that West is not disabled and, therefore, not entitled to benefits or income under Title II. (Doc. 16-2, at 8-23). The Appeals Council subsequently denied West's request for review. (Doc. 16-2, at 1-6).

On August 31, 2020, West commenced the instant action. (Doc. 1). The Commissioner responded in April 2021, providing the requisite transcripts from West's disability proceedings. (Doc. 15; Doc. 16). The parties then filed their respective briefs, with West raising two principal bases for reversal or remand. (Doc. 17; Doc. 18).

II.   **STANDARD OF REVIEW**

To receive benefits under Titles II of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than

12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1509. To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).[2] Additionally, to be eligible under Title II, a claimant must have been insured for disability insurance benefits. 42 U.S.C. § 423(a)(1)(a); 20 C.F.R. § 404.131.

## A. ADMINISTRATIVE REVIEW

In evaluating whether a claimant is disabled, the "Social Security Administration, working through ALJs, decides whether a claimant is disabled by following a now familiar five-step analysis." *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 200–01 (3d Cir. 2019); *see* 20 C.F.R. § 404.1520(a). Under this process, the Commissioner must determine, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do past relevant work, considering his or her residual functional capacity (RFC); and (5) whether the claimant is able to do any other work that exists in significant numbers in the national economy, considering his or her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a). The "burden of proof is on the claimant at all steps except step five, where the burden is on the Commissioner of Social Security." *Hess*, 931 F.3d at 201; *see* 20 C.F.R. § 404.1512(a). Thus, if the claimant establishes an inability to do past relevant work at step four, the burden shifts to the Commissioner at

---

[2] A "physical or mental impairment" is defined as an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

step five to show that jobs exist in significant numbers in the national economy that the claimant could perform consistent with his or her residual functional capacity, age, education, and past work experience. 20 C.F.R. § 404.1512(f).

B. JUDICIAL REVIEW

The Court's review of a determination denying an application for Title XVI benefits is limited "to considering whether the factual findings are supported by substantial evidence." *Katz v. Comm'r Soc. Sec.*, No. 19-1268, 2019 WL 6998150, at *1 (3d Cir. Dec. 20, 2019). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotations omitted). The quantum of proof is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial if the ALJ ignores countervailing evidence or fails to resolve a conflict created by such evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

The question before the Court, therefore, is not whether West was disabled, but whether the Commissioner's determination that West was not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial

- 4 -

evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). If "the ALJ's findings of fact . . . are supported by substantial evidence in the record," the Court is bound by those findings. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).

III.   **THE ALJ'S DECISION**

In a decision dated July 2, 2019, the ALJ determined that West "has not been under a disability, as defined in the Social Security Act, at any time from July 10, 2017, the alleged onset date, through March 31, 2018, the date last insured." (Doc. 16-2, at 20). The ALJ reached this conclusion after proceeding through the five-step sequential analysis provided in 20 C.F.R. § 404.1520(a)(4). Prior to proceeding through the five-step sequential analysis, the ALJ found that West last met the insured status requirements of the Social Security Act on March 31, 2018. (Doc. 16-2, at 13).

A.   STEP ONE

At step one, an ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If a claimant is engaging in substantial gainful activity, the claimant is not disabled, regardless of age, education, or work experience. 20 C.F.R. § 404.1520(b). Substantial gainful activity is defined as work activity requiring significant physical or mental activity and resulting in pay or profit. 20 C.F.R. § 404.1572. The ALJ must consider only the earnings of the claimant. 20 C.F.R. § 404.1574(a)(2). Here,

the ALJ determined that "[West] did not engage in substantial gainful activity during the period from her alleged onset date of July 10, 2017, through her date last insured of March 31, 2018." (Doc. 16-2, at 13). Thus, the ALJ proceeded to step two.

B. STEP TWO

At step two, the ALJ must determine whether the claimant has a medically determinable impairment – or a combination of impairments – that is severe and meets the 12-month duration requirement. 20 C.F.R. § 404.1502(a)(4)(ii). If the ALJ determines that a claimant does not have an impairment or combination of impairments that significantly limits the claimant's "physical or mental ability to do basic work activities," the ALJ will find that the claimant does not have a severe impairment and is therefore not disabled. 20 C.F.R. § 404.1520(c). If, however, a claimant establishes a severe impairment or combination of impairments, the ALJ proceeds to consider step three. Here, the ALJ found that West had two severe, medically determinable impairments: (1) degenerative disc disease, and (2) diabetes mellitus. (Doc. 16-2, at 13). Additionally, the ALJ found that West suffered from the non-severe impairment of depression. (Doc. 16-2, at 13).

C. STEP THREE

At step three, the ALJ must determine whether the severe impairment or combination of impairments meets or equals the medical equivalent of an impairment listed in the version of 20 C.F.R. § Pt. 404, Subpt. P, App. 1 that was in effect on the date of the ALJ's decision. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525, 404.1526. The sections in this appendix are commonly referred to as "listings." If the ALJ determines that the claimant's impairment or impairments meet a listing, then the claimant is considered disabled, otherwise, the ALJ must proceed to and analyze the fourth step of the sequential analysis. 20 C.F.R. § 404.1520(d).

- 6 -

Here, the ALJ determined that West did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (Doc. 16-2, at 15). The ALJ considered the musculoskeletal listings under section 1.00 of appendix 1 – specifically, listings 1.02 (major dysfunction of a joint) and 1.04 (disorders of the spine). 20 C.F.R. Part 404, Subpt. P, App. 1 § 1.00. (Doc. 16-2, at 15).

D. RESIDUAL FUNCTIONAL CAPACITY

Between steps three and four, the ALJ determines the claimant's residual functional capacity ("RFC"), crafted upon consideration of all the evidence presented. At this intermediate step, the ALJ considers all claimant's symptoms and "the extent to which [they] can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a). This involves a two-step inquiry according to which the ALJ must (1) determine whether an underlying medically determinable mental impairment or impairments could reasonably be expected to produce the claimant's symptoms; and, if so, (2) evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations. *See* 20 C.F.R. §§ 404.1529(b)-(c).

After weighing West's written and oral statements against other evidence in the record, the ALJ found that West's impairments could reasonably be expected to cause the alleged symptoms, but that her statements about the intensity, persistence, and the limiting effects of the symptoms are not entirely consistent with the medical evidence and other evidence in the record. (Doc. 16-2, at 16). The ALJ then went on to detail West's medical records and treatment history. (Doc. 16-2, at 16-18). Considering all evidence in the record, the ALJ

determined that West has the RFC "to perform sedentary work as defined in 20 C.F.R. 404.1567(a)," with additional limitations to address her medical impairments:

> [West] must avoid unprotected heights. [West] must also avoid climbing ladders and scaffolds and is limited to climbing ramps and stairs occasionally. [West] is limited to no more than occasional exposure to extreme cold temperatures and wetness. [West] is limited to the occasional use of her left lower extremity for operation of foot controls and pedals.

(Doc. 16-2, at 15-16).

E.  STEP FOUR

Step four requires the ALJ to determine whether the claimant had, during the relevant period, the RFC to perform the requirements of his or her past relevant work regardless of the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(iv). Past relevant work is work that the claimant has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 404.1560(b). The ALJ considers whether the claimant retains the capacity to perform the particular functional demands and job duties of the past relevant work, either as the claimant actually performed it or as ordinarily required by employers throughout the national economy. *Garibay v. Comm'r Of Soc. Sec.*, 336 F. App'x 152, 158 (3d Cir. 2009) (quoting SSR 82–6). "If the claimant can perform his [or her] past relevant work despite his limitations, he [or she] is not disabled." *Hess*, 931 F.3d at 202 (citing 20 C.F.R. § 404.1520(a)(4)(iv)). Here, after comparing West's RFC to the demands of West's past relevant work as a molding machine operator, the ALJ found, based on testimony adduced from a vocational expert at West's administrative hearing, that West was unable to perform any past relevant work. (Doc. 16-2, at 18-19).

- 8 -

F. Step Five

At step five, the ALJ considers the claimant's age, education, and work experience to determine whether the claimant can make the adjustment to other work. 20 C.F.R. § 404.1520(a)(4)(v). A claimant who can adjust to other work is not disabled. 20 C.F.R. § 404.1520(a)(4)(v). Here, considering West's age, education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that West could have performed. (Doc. 16-2, at 19-20). In making this determination, the ALJ relied on the expertise of the vocational expert, who testified that West could have performed the requirements of representative occupations, such as an addresser, a document specialist, and a surveillance system monitor. (Doc. 16-2, at 19-20). Given the foregoing analysis, the ALJ determined that West was not disabled and therefore denied her applications for benefits. (Doc. 16-2, at 20).

IV. **Discussion**

On appeal, West contends that the ALJ erred in weighing the opinion evidence of record pursuant to the appropriate legal standards, erred in finding at step two that her mental health conditions were not severe, and additionally challenges the ALJ's RFC assessment. (Doc. 17, at 9-15). Specifically, West contends that the ALJ failed to credit the physical limitations which were provided by the treating source, Heather Yost, PA-C ("PA Yost"), and found Ms. Yost's opinion unpersuasive for erroneous reasons. (Doc. 17, at 10-13). West contends further that in addition to the fact that the ALJ erred in finding her mental health impairments non-severe, he erred in failing to take consideration of them in the RFC, even as non-severe impairments. (Doc. 17, at 13). In response, the Commissioner maintains that the

- 9 -

ALJ's decision is supported by substantial evidence and reflects a proper application of the law and regulations. (Doc. 18).

For the reasons set forth below, the Commissioner's decision will be vacated, and the case will be remanded for further consideration. Upon remand, the ALJ is instructed to consider and make specific findings as to all relevant probative medical evidence, including assessing the credibility of the evidence and weighing the evidence.

A. SUBSTANTIAL EVIDENCE DOES NOT SUPPORT THE ALJ'S WEIGHING OF THE OPINION EVIDENCE OF RECORD

West's primary argument on appeal is that the ALJ erred in weighing the opinion evidence of record, thus the RFC is not supported by substantial evidence. (Doc. 17, at 9-13). The Court of Appeals has ruled that the ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determination. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). "[RFC]" is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d at 121 (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 (3d Cir. 1999)). Specifically, one's RFC reflects the *most* that an individual can still do, despite his or her limitations, and is used at steps four and five to evaluate the claimant's case. 20 C.F.R. §§ 404.1520, 404.1545; SSR 96-8P, 1996 WL 374184 at *2. When determining an individual's RFC, the ALJ must consider all the evidence of the record including medical signs and laboratory findings, medical source statements, and a claimant's medical history. SSR 96-8p, 1996 WL 374184, at *5; *see also Mullin v. Apfel*, 79 F. Supp. 2d 544, 548 (E.D. Pa. 2000). "[O]nce the ALJ has made this [RFC] determination, [a court's] review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside

- 10 -

if it is supported by substantial evidence." *Black v. Berryhill*, No. 16-1768, 2018 WL 4189661 at *3 (M.D. Pa. Apr. 13, 2018).

As this matter involves a claim filed after March 27, 2017, the new regulatory framework applies to the ALJ's evaluation of medical opinions in the record. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132-01 (Mar. 27, 2017)); *see also* 82 Fed. Reg. 15263 (March 27, 2017); 82 Fed. Reg. 16869 (corrective notice) (explaining that SSR 96-2p and 96- 5p do not apply to newly filed or pending claims after March 27, 2017). The new regulations more specifically define "medical opinion" and eliminate what has been referred to as the "treating source rule." 82 Fed. Reg. 5844; 20 C.F.R. § 416.913(a)(2) (2017) (defining "medical opinion"); 20 C.F.R. § 416.920c (2017) (explaining how an adjudicator considers and articulates his or her consideration of medical opinions). By eliminating the treating source rule and making other prominent changes, for claims filed on or after March 27, 2017, the new regulations alter standards the agency and federal courts have applied for many years. To the extent that prior caselaw conflicts with valid, updated regulations, the new regulations apply. *See Moore-Allen v. Saul*, No. 20-CV-2696, 2021 WL 2343012, at *7-8 (E.D. Pa. June 7, 2021); *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982-83 (2005) ("A court's prior construction of a statute trumps an agency construction otherwise entitled to *Chevron* deference only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion.").

Under the new regulations, however, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20

- 11 -

C.F.R. § 416.920c(a). Rather than assigning weight to medical opinions, the Commissioner will articulate "how persuasive" he or she finds the medical opinions. 20 C.F.R. § 416.920c(b). And the Commissioner's consideration of medical opinions is guided by the following factors: supportability; consistency; relationship with the claimant (including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and the examining relationship); specialization of the medical source; and any other factors that tend to support or contradict the opinion. 20 C.F.R. § 416.920c(c). The most important of these factors are the "supportability" of the opinion and the "consistency" of the opinion. 20 C.F.R. § 416.920c(b)(2). As to supportability, the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1). And as to consistency, those regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(2).

Under the new framework, instead of assigning weight to any medical opinion(s), the ALJ now considers the persuasiveness of a medical opinion by weighing certain factors, including supportability and consistency. 20 C.F.R. § 404.1520c(c). After considering the relevant factors, the ALJ is only required to explain how he considered "the most important factors" of supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). The ALJ may, but is not required to, explain how they considered the other factors. 20 C.F.R. § 404.1520c(b)(2).

In evaluating the medical opinion evidence of record, "the ALJ is not only entitled but required to choose between" conflicting medical opinions. *Cotter*, 642 F.2d at 705. "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo*, 383 U.S. at 620. Moreover, "[i]n the process of reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute [our own] conclusions for those of the fact-finder.' " *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)). Applying the above standard to the present record, the Court finds that the RFC assessment is not supported by substantial evidence.

In relevant part, West suffers from back pain which began in May 2017 and has continued since that time, despite a brief 2-month remission from May 2017 through July 2017. (Doc. 16-7, at 4). West's first treatment records regarding this impairment are from Vicki Passi, M.D. ("Dr. Passi"). (Doc. 16-8, at 86). By way of history, the medical records indicate that West was first seen by Dr. Passi at Family Practice Center in 2007. (Doc. 16-8, at 4). In October of 2010, West was additionally seen by PA Yost, a physician assistant working at Family Practice Center. (Doc. 16-8, at 18). Thereafter, treatment records show that West was regularly seen by both Dr. Passi and PA Yost. (Doc. 16-8, 22-151).

On August 3, 2017, West presented to Dr. Passi with back pain and left side sciatic pain and was noted to have back tenderness, tenderness with extension of leg, positive staring leg raising, and intact reflexes and sensation. (Doc. 16-8, at 86). Dr. Passi referred West to physical therapy and ordered an X-Ray of the spine. (Doc. 16-8, at 86). An X-Ray taken that day indicated mild-to-moderate disc height loss at L4-5. (Doc. 16-9, at 57). On August 28, 2017, West returned to Dr. Passi for follow-up but had not yet started physical therapy. (Doc.

- 13 -

16-8, at 88). On August 30, 2017, West attended physical therapy at Phoenix Rehabilitation and Health Services ("Phoenix Rehab") and was noted to have pain in her low back and left leg, reduced range of motion in the lumbar spine, a positive slump test, and positive straight leg raising. (Doc. 16-7, at 4-5). At a September 18, 2017, visit, it was noted that West had difficulty walking. (Doc. 16-7, at 14). West continued treatment with Phoenix Rehab from August through November with no ultimate resolution of her symptoms. (Doc. 16-7, at 4-34). On September 6, 2017, West was seen by PA Yost. (Doc. 16-8, at 91). On October 9, 2017, West was seen by Dr. Passi and noted to have antalgic gait and positive straight leg raising, and Dr. Passi ordered an MRI. (Doc. 16-8, at 94).

On November 1, 2017, West underwent an MRI that revealed "1. Tiny central and left paracentral disc extrusion at L4-5 contacts but does not compress the descending left L5 nerve within the left lateral recess" and "2. Tiny disc bulge at L5-S1 contacts but does not compress the descending left S1 nerve." (Doc. 16-13, at 50-51). In December of 2017, West was seen and evaluated by PA Yost at a routine follow-up visit. (Doc. 16-8, at 96). On December 18, 2017, on referral from Dr. Passi, West was seen and evaluated by Moin Mallhi, M.D. ("Dr. Mallhi"), of Columbia Pain Management. (Doc. 16-7, at 53-55). Dr. Mallhi diagnosed West with intervertebral disc degeneration, spondylosis, intercostal neuropathies, mononeuropathies of the lower extremity, meralgia paresthetica, lesion of the left popliteal nerve, bursitis of the hip, sacroiliitis, and myalgia. (Doc. 16-7, at 53-55). Dr. Mallhi opined that West would be a good candidate for regional nerve blocks to control the neuropathic component of her pain. (Doc. 16-7, at 55).

On December 22, 2017, West was seen and evaluated by chiropractor Karen Buerger-Talacka, D.C. ("Dr. Buerger-Talacka"). (Doc. 16-7, at 4-5). At a February 2018 follow-up

appointment, Dr. Buerger-Talacka opined that West had moderate restriction in thoraco-lumbar extension, moderate restriction in right lateral bending, and moderate restriction in left and right rotation. (Doc. 16-7, at 62). Dr. Buerger-Talacka diagnosed West with radiculopathy. (Doc. 16-7, at 63-68). On January 12, 2108, West returned to Dr. Passi and stated that she had received a trigger point injection but was noted to have continued pain and tenderness in the back and with extension. (Doc. 16-8, at 98).

Due to her back impairments, West contends that she is limited in her ability to lift and would be off task for more than 15% of the workday and would have excessive absences. (Doc. 17, at 12-13). West argues that the ALJ improperly evaluated the opinion evidence in crafting the RFC assessment. (Doc. 17, at 10-13). Particularly, West contends that the ALJ erroneously found the opinion of PA Yost to be "unpersuasive" and found the opinion of Dr. Chankun Chung ("Dr. Chung"), a non-examining State agency medical consultant, to be persuasive. (Doc. 17, 10-13). West further avers that in crafting the RFC, the ALJ should have included the limitations opined by PA Yost. (Doc. 17, 10-13). On July 12, 2018, Dr. Chung opined that West could perform light work with postural limitations. (Doc. 16-3, at 2-12). The ALJ found Dr. Chung's opinion "persuasive" noting that it was "consistent with the medical records." (Doc. 16-2, at 17-18).

Additionally, on April 5, 2019, PA Yost completed a medical source statement concerning West's physical capabilities and her ability to perform work-related activities. (Doc. 16-10, at 30-34). In the form, PA Yost opined that West could walk 1 city block, sit for 15 minutes at a time and for a total of 4 hours in an 8-hour day, stand for 15 minutes at a time, and stand and walk for a total of fewer than 2 hours in an average workday. (Doc. 16-10, at 32). PA Yost noted that the clinical findings which supported her opinions were "x-ray

lumbar spine – mild to moderate disc degeneration L 4-5, MRI Lumbar spine – left paracentral

disc extrusion L4/L5 contacts left L5 nerve root, bulge at L5/S1 contacts S1 nerve." (Doc.

16-10, at 30). The ALJ found PA Yost's opinion unpersuasive, concluding:

> First, Ms. Yost opined that the symptoms started prior to this provider seeing
> [West] that would only be based on [West's] statements and not based on
> objective medical evidence. Second, Ms. Yost's opinion is not supported by her
> own articulation because she only notes a positive supine straight leg raise test,
> muscle spasm, tenderness and impaired sleep, as the symptoms that
> would cause the severe exertional limitations. Third and finally, Ms. Yost opinion is
> not consistent with the above MRI and x-ray from this time period.

(Doc. 16-2, at 18).

Regarding the MRI and X-Ray noted above, the ALJ had stated that "[i]n August 2017,

[West] had a lumbosacral x-ray that did show mild-to-moderate disc degeneration at L4-L5.

In November 2017, the MRI of her lumbar spine described this degeneration as a tiny central

and left paracentral disc extrusion or a tiny bulge at two levels." (Doc. 16-2, at 17).

West argues that the ALJ erred in finding PA Yost's opinion to be unpersuasive and

contends that the grounds which the ALJ recites for finding PA Yost's opinion unpersuasive

are incorrect. (Doc. 17, at 10-13). Specifically, West argues that in disregarding PA Yost's

opinion, the ALJ ignored countervailing evidence, improperly concluded that PA Yost's

opinion was not objective medical evidence because she opined the symptoms started prior

to seeing West, and improperly relied on the ALJ's own non-expert analysis of the MRI and

X-Rays in finding that PA Yost's opinions were inconsistent with the X-Ray and MRI

findings. (Doc. 17, at 10-13). The Commissioner concedes in his argument that PA Yost saw

West in September and December of 2017. (Doc. 18, at 15). The Commissioner argues further

that PA Yost's opinion was inconsistent with the opinion of the state agency examiner Dr.

Chung, and that it was inconsistent with the MRI which showed "tiny disc bulges and

extrusions." (Doc. 18, at 17). Interspersed throughout the Commissioner's argument is an argument that PA Yost's opinion is inconsistent with the fact that West worked part-time during the relevant period. (Doc. 17). The Court finds that West prevails as to this issue.

We address the argument set forth by the Commissioner that Dr. Yost's opinion was inconsistent with the fact that West worked part-time. This argument is irrelevant for two reasons. First, the ALJ considered all of West's work and found that in the relevant period, she did not engage in substantial gainful activity. (Doc. 16-2, at 13). More importantly, at no point in the decision did the ALJ discuss the fact that West worked part-time. (Doc. 16-2, at 18). Indeed, in setting forth the reasons that he found PA Yost's opinion unpersuasive, the ALJ made no mention of part-time work, but rather gave three unrelated reasons for his conclusion. (Doc. 16-2, at 18).

Reviewing the record as a whole, the Court finds that the ALJ's weighing of the opinion evidence is not supported by substantial evidence. It is the purview of the Court to determine whether the reasons articulated by the ALJ are legally correct. As noted above, "the ALJ may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" *Plummer*, 186 F.3d at 429. It is the place of neither the Court nor the Commissioner to speculate as to what reasons the ALJ might have for making a conclusion other than those articulated by the ALJ, and our review must remain within the four corners of the decision. The Court of Appeals has repeatedly held that the ALJ's articulation of the weight accorded to each medical opinion must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981); *Fargnoli v. Massanari*, 247 F.3d 34, 41 (3d Cir. 2001); *Plummer*, 186 F.3d at 429. The *Cotter* court explained:

There are cogent reasons why an administrative decision should be

accompanied by a clear and satisfactory explication of the basis on which it rests. Chief among them is the need for the appellate court to perform its statutory function of judicial review. A statement of reasons or findings also helps to avoid judicial usurpation of administration functions, assures more careful administrative consideration, and helps the parties plan their cases for judicial review.

*Cotter*, 642 F.2d at 704 (citations omitted).

In this case, the ALJ gave three reasons for his finding that PA Yost's opinion was not persuasive. The Court finds each of those reasons to be flawed. First, the ALJ stated that West's symptoms started prior to her seeing PA Yost and that, therefore, PA Yost was relying upon West's statements and was not based on objective medical evidence. (Doc. 16-2, at 18). Yet, this is erroneous because West has been treated by both PA Yost and Dr. Passi beginning October of 2010. (Doc. 16-8, at 18). Second, the ALJ stated that Ms. Yost's articulation for support of her opinion was straight leg raising, muscle spasm, tenderness, and impaired sleep. (Doc. 16-2, at 18). However, PA Yost did note in her medical source statement that she based her opinion on objective medical findings. (Doc. 16-10, at 30). Indeed, PA Yost stated that the clinical findings, laboratory and test results that supported her opinions were: "x-ray lumbar spine – mild to moderate disc degeneration L 4-5, MRI Lumbar spine – left paracentral disc extrusion L4/L5 contacts left L5 nerve root, bulge at L5/S1 contacts S1 nerve." (Doc. 16-10, at 30). Third, the ALJ argued that PA Yost's opinion contradicted the MRI results. However, the MRI results did show there were disc extrusions that contacted the nerve root. Yet, at no point in his decision did the ALJ address the fact that the MRI indicated that there was nerve root involvement. (Doc. 16-10, at 30).

Finding that the ALJ failed to properly evaluate the opinion evidence of record, the Court concludes that substantial evidence does not support the ALJ's RFC assessment.

Notably, the ALJ failed to address the medical records from Phoenix Rehab or Columbia Pain Management in any meaningful way. Specifically, the ALJ did not address the fact that Dr. Mallhi's finding was consistent with and supported the opinion of PA Yost, as Dr. Mallhi noted that there was nerve root involvement and diagnosed West with neuropathy and lesions on her nerves. (Doc. 16-7, at 55). The ALJ's failure to explain his implicit rejection of contradictory evidence or to acknowledge its presence amounts to error. *See Fargnoli*, 247 F.3d at 44; *see also Burnett*, 220 F.3d at 119; *Cotter*, 642 F.2d at 707. "Although we do not expect the ALJ to make reference to every treatment note . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law." *See Fargnoli*, 247 F.3d at 42; *see also Cotter*, 642 F.2d at 705; *Gleason v. Colvin*, 152 F. Supp.3d 364, 386 (M.D. Pa. 2015). The Court of Appeals has repeatedly held that "[a]n ALJ cannot rely only on the evidence that supports his or her conclusion, but also must explicitly weigh all relevant, probative, and available evidence; and provide some explanation for a rejection of probative evidence which would suggest a contrary disposition." *See Gleason*, 152 F. Supp.3d at 386; *see also Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994); *Cotter*, 642 F.2d at 705.

Accordingly, for the reasons stated above, the Court finds that the ALJ's decision is not supported by substantial evidence. Therefore, the decision of the Commissioner of Social Security will be vacated and this case will be remanded for further proceedings consistent with this Memorandum.

B.  THE COURT DECLINES TO ADDRESS WEST'S REMAINING ARGUMENTS

Because the Court has vacated and remanded the decision of the Commissioner for further consideration, concluding that the ALJ's RFC assessment is not supported by

- 19 -

substantial evidence, the Court declines to address Johnston's remaining arguments. "A remand may produce different results on these claims, making discussion of them moot." *Burns v. Colvin*, 156 F. Supp. 3d 579, 598 (M.D. Pa. 2016). The Court's evaluation of West's additional contentions would be futile given that the ALJ's decision concerning West's RFC assessment may yield a different result.

V.    **REMEDY**

As a final matter, the Court addresses whether this case should be remanded to the Commissioner for further administrative proceedings or whether reversal and an award of benefits are appropriate. The Court has authority to affirm, modify or reverse the Commissioner's decision "with or without remanding the case for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 100–01 (1991). However, the Third Circuit has advised that benefits should only be awarded where "the administrative record of the case has been fully developed and when substantial evidence in the record as a whole indicates that the claimant is disabled and entitled to benefits." *Morales*, 225 F.3d at 320; *see e.g. Fla. Power & Light Co. v. Lorion,* 470 U.S. 729, 744 (1985) ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."). Here, the appropriate measure is to remand for further development of the record. Upon remand, the ALJ is instructed to consider and make specific findings as to all relevant probative medical evidence.

VI.    **CONCLUSION**

Based on the foregoing, the Commissioner's decision to deny West disability benefits is **VACATED** and the case is **REMANDED** to the Commissioner to fully develop the record,

- 20 -

conduct a new administrative hearing, and appropriately evaluate the evidence pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court is directed to **CLOSE** this case.

An appropriate Order will follow.

**Dated: January 18, 2022**                      *s/ Karoline Mehalchick*

                                             **KAROLINE MEHALCHICK**
                                             **Chief United States Magistrate Judge**